--
## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 18-13443 KHT |
| COLORADO WICH LLC, | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | Case No. 18-13449 EEB |
| COLORADO WICH INC., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | **Jointly Administered Under** |
| | ) | **Bankruptcy Case No. 18-13443 KHT** |
| | ) | |

## FIRST AMENDED JOINT PLAN OF REORGANIZATION
## DATED MARCH 15, 2019

Colorado Wich LLC and Colorado Wich Inc., collectively referred to as (the "Debtors" or "Colorado Wich"), by and through their counsel, Buechler Law Office L.L.C. respectfully propose the following First Amended Joint Plan of Reorganization (the "Plan") pursuant to 11 U.S.C. § 1121(a) as follows:

## ARTICLE I
## PLAN SUMMARY

The Plan under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code" or the "Code") proposes to pay creditors of the Debtor from two sources, first from the Debtor's net income and second from the sale of some or all of the Debtors' retail locations over a period of time not to exceed the earlier of 3 months from the Effective Date of this Plan or December 31, 2019. If the secured creditor classes have not been paid at the end of that period than, unless otherwise agreed to by the affected secured creditor(s) class, the remaining retail locations will be closed and the inventory and equipment located therein will be placed for sale at a public or privately held auction, or abandoned by the Debtor to the then senior secured creditor to exercise its state law remedies. [1]

---

[1] The franchisor of the Debtors maintains it has the right to approve any sale or transfer of the Debtor owned Colorado Which Wich franchises to a new franchisee, should the sale of a franchise location as opposed to asset sale of the inventory and equipment of a location occur.

This Plan provides for twelve (12) total classes of claims, five (5) classes of secured claims; four (4) classes of priority claims, two (2) classes of unsecured claims; and one (1) class of the Debtor's equity holders. General unsecured creditors may receive distributions from the sale of the Reorganized Debtors Properties and Assets, consistent with the requirement that senior tax liens and secured creditors having first been paid. Regardless of Class, payments to all allowed claimants shall not extend beyond (1) the sooner of 90 days from the Effective Date or December 31, 2019, whichever occurs first or (2) in the event the Reorganized Debtor is successful in the sale of its Properties and Assets, in whole or in part, in which case payments may occur as soon as the asset sale occurs.

Holders of unsecured insider class 11 allowed claims shall not receive any distributions until general unsecured class 10 allowed claims have been paid at least 50% of their allowed unsecured claims, at which time pro rata distributions to both class 10 and class 11 creditors shall commence.

All creditors and equity security holders should refer to Articles II through VII of this Plan for information regarding the precise treatment of their claim.  **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## A.      BACKGROUND OF FILINGS AND SUBSTATNTIVE CONSOLIDATION:

The Debtor, Colorado Wich Inc., filed for relief under Chapter 11 of the Bankruptcy Code on April 24, 2018 and remains a debtor-in-possession. In the companion case, the Debtor, Colorado Wich LLC filed for relief under Chapter 11 of the Bankruptcy Code also on April 24, 2018 and remains a debtors-in-possession. Simultaneously with the filings the Debtors jointly filed their Motion for Joint Administration, which was granted by the Court on April 25, 2018.

Colorado Wich LLC operates a franchise called Which Wich Superior Sandwich Shops ("Which Wich") and currently owns and operates seven (7) retail locations in the Denver metro area and along the Front Range in the State of Colorado.  Which Wich specializes in custom sandwich making. Colorado Wich Inc. is merely a holding company for Colorado Wich LLC., which is the actual operating Debtor entity. Colorado Wich Inc., has nominal assets of little value. The financial issues facing Colorado Wich LLC and Colorado Wich Inc., are significantly inter-related since Colorado Wich Inc., has guaranteed many of the leases for the commercial retail spaces occupied by Colorado Wich LLC.

The creditors and related issues that are involved in both of the Debtors' cases are to a great extent, identical. In recognition of this reality and to expedite the reorganization process, upon confirmation of this Plan Colorado Wich Inc., shall be deemed dissolved and its estate and the assets and liabilities on Colorado Wich Inc. substantively consolidated with Colorado Wich LLC, which upon confirmation of this Plan will become the Reorganized Debtor.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1    Class 1        All allowed claims entitled to priority under 11 U.S.C. § 507 (except administrative expense claims under 11 U.S.C. § 507(a)(2), priority wage claims under 11 U.S.C. § 507(a)(4), and priority tax claims under 11 U.S.C. § 507(a)(8)).

2.2    Class 2        The secured claim of Citywide Bank, f/k/a/ Millennium Bank, ("Citywide") which is secured by various security agreements and recorded financing statements against all of the assets of the Debtors, pursuant to 11 U.S.C. § 506.

2.3    Class 3        The secured claim of Meadows Bank ("Meadows"), which is secured by a recorded financing statement against certain equipment owned by the Debtors only at its location commonly known as Crestline pursuant to 11 U.S.C.   § 506.

2.4    Class 4        The secured  claim of Chase Bank ("Chase") which is secured by various security agreements and recorded financing statements against all of the assets of the Debtors, pursuant to 11 U.S.C. § 506.

2.5    Class 5        The second claim of Everest Business Funding ("Everest")which is secured by various security agreements and recorded financing statements against future cash of the Debtors, pursuant to 11 U.S.C. § 506. Any deficiency portion shall be treated as a Class 10 claim.

2.6    Class 6        The secured claims of Accel Capital Inc., and Accel Capital LLC ("Accel") which is secured by a recorded financing statement against future cash and other assets of the Debtors pursuant to 11 U.S.C. § 506. Any deficiency portion shall be treated as a Class 10 claim.

2.7    Class 7        The unsecured priority tax claim of the Colorado Department of Revenue for any unpaid and accrued taxes as of the Petition Date, to the extent such claim is allowed pursuant to 11 U.S.C. § 507(a)(8) as provided by 11 U.S.C. § 1129(a)(9)(D).

2.8    Class 8        The unsecured priority tax claim of the Internal Revenue Service for any unpaid and accrued income taxes as of the Petition, to the extent such claim is allowed pursuant to 11 U.S.C. § 507(a)(8) as provided by 11 U.S.C. § 1129(a)(9)(D).

2.9    Class 9        The unsecured priority tax claim of all county or local city or municipal taxing authorities for any unpaid and accrued taxes as of the Petition Date, to the extent such claim is allowed pursuant to 11 U.S.C. § 507(a)(8) as provided by 11 U.S.C. § 1129(a)(9)(D).

2.10    Class 10        General unsecured claims allowed under 11 U.S.C. § 502 except for insider unsecured claims, of both Colorado Wich, Inc. and Colorado Wich, LLC.

3

2.11   <u>Class 11</u>      General unsecured claims of insiders as allowed under 11 U.S.C. § 502.

2.12   <u>Class 12</u>      All holders of equity interests in the Debtors.

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, US TRUSTEE FEES, LEASES, AND PRIORITY CLAIMS**

3.1   <u>Unclassified Claims</u>.   Under 11 U.S.C. § 1123(a)(1), certain administrative expense claims are not required to be classified.   For purposes of this Plan, such unclassified claims consist of the allowed administrative expense claims under 11 U.S.C. § 507(a)(2).   Each holder of an allowed unclassified administrative expense claim will be paid in full on the Effective Date of this Plan (as defined in Article VIII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.2   **Class 1. Administrative Expenses.** Class 1 consists of all other allowed claims entitled to priority under 11 U.S.C. § 507 (except administrative expense claims under 11 U.S.C. § 507(a)(2), priority wage claims under 11 U.S.C. § 507(a)(4), and priority tax claims under 11 U.S.C. § 507(a)(8)).   Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid in full on the Effective Date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.3   **Assumption of Lease.** Pre-petition, the Debtors as tenants leased eight retail store locations pursuant to those certain leases described below ("Leases"): [2]

A.   **Cornerstar Lease dated November 26, 2007**, Colorado Wich – Cornerstar, LLC Tenant, BRE DDR BR Cornerstar Co. LLC, Landlord, Expires November of 2018.

B.   **Crestline Lease dated November 23, 2012**, Colorado Wich – Crestline LLC Tenant, Plaza on the Green LLC, Landlord, Lease assumed and extended per Court order allowing assumption, [Doc. No 80] dated June 28, 2018.

C.   **Colorado Mills Lease dated March 26, 2010**, Colorado Wich- Colorado Mills LLC Tenant, Burgundy Partners LLC, Landlord, Expires March of 2020.

D.   **DTC Lease dated October 1, 2011**, Colorado Wich – DTC, LLC Tenant, MR Marina Square LLC, Landlord, Expires October 2021.

E.   **Lonetree Lease dated January 4, 2007**, Color Wich-Lonetree LLC, Tenant, Meadows

---

[2]  The lease for the location commonly known as Crestline has been assumed by the Debtors pursuant to an Order of the Court dated June 28, 2018 [Doc. No. 80]. The Debtors have also decided not to renew its lease for the Cornerstar location which expired by its own terms in November of 2018.

Manager 05, LLC Landlord, Expires May 2022.

F. **Highlands Ranch Lease dated April 21, 2010**, Colorado Wich – Highlands Ranch TCN LLC, Tenant, Shea Homes – TCN 1 LLC, Landlord, Expires April 2020.

G. **Colorado & Evans Lease dated March 3, 2010**, Colorado Wich – EvCo, LLC Tenant, UPSC LLC Landlord, Expires March of 2020.

H. **Orchard Town Center Lease dated January 23, 1997 -Extension Dated May 1, 2018**, Colorado Wich – Orchards, LLC Tenant, Vestar Orchard Town Center LLC, Landlord, Expires April 2028.                              .

(a) As part of this Plan the Debtor hereby elects to assume the Leases for its locations at Colorado Mills, DTC, Lonetree, Highlands Ranch, Colorado & Evans, and Orchard Town Center. The lease of the location commonly known as Crestline has already been assumed by the Debtors and that assumption is hereby ratified by this Plan.

(b) Unless otherwise subject to an order of the Bankruptcy Court, no later than ninety (90) days after the Effective Date, the Debtor shall cure its pre-petition arrears under the Leases, if any, in full in cash unless otherwise agreed to by the respective landlord(s).

(c) The Debtors further elect to assume the following executory contracts:

All machinery and equipment leases including but not limited to Master EFA Agreement ME 00140539, CIT Direct capital.

All franchise agreements and contracts on any kind between the Debtors and Which Wich Franchise Inc., the franchisor, or its assigns and designees.

All employee benefits agreement or contract for life, health, or disability insurance.

3.4   <u>Priority Tax Claims</u>.   The holders of priority tax claims will be paid as follows:

a.   **Class 7.   Priority Tax Claim of Colorado Department of Revenue.**  Class  7 consists of the unsecured priority tax claims of the Colorado Department of Revenue for any unpaid and/or accrued sales and other taxes owing as of the Petition Date under 11 U.S.C. § 507(a)(8).   The Debtor agrees with the Proof of Claim submitted for taxes in the amount of $104,206.94 by the Colorado Department of Revenue as of the Petition Date.   To the extent such claims is allowed, it shall bear interest at the statutory rate of seven percent (7%) on the Effective Date and shall be paid in full on or before December 31, 2019.   Any general unsecured claim of any entity asserting a priority tax claim under this section, including any claim for penalties not related to actual pecuniary loss, shall be paid as provided for pursuant to Class 10 of the Plan, unless subordinated by separate order of the Court.

b.      **Class 8.   Priority Tax Claim of Internal Revenue Service.** Class 8 consists of the unsecured priority tax claims of the Internal Revenue Service for any unpaid and/or accrued taxes owing as of the Petition Date under 11 U.S.C. § 507(a)(8).   The IRS filed a proof of claim in the amount of $127,779.71 for unassessed liability for the Debtor's payroll tax obligations and corporate income taxes. To the extent such claims are allowed, the claims shall bear interest at the statutory rate of six percent (6%) on the Effective Date and shall be paid if funds are available after the payment of senior secured debt, which payment if any shall be made on or before December 31, 2019.   Any general unsecured claim of any entity asserting a priority tax claim under this section, including any claim for penalties not related to actual pecuniary loss, shall be paid as provided for pursuant to Class 10 of the Plan, unless subordinated by separate order of the Court.

c.      **Class 9.   County and Municipal Priority Tax Claims.**   The counties of Denver, Douglas, Arapahoe, El Paso, Jefferson and Yuma and the municipalities of the Cities of Aurora, Lakewood, Lone Tree, Westminster, and Denver, Colorado have each filed priority claims for Business Personal Property and other taxes owed in an aggregate amount $98,696.34, some of which are claimed as secured liens.   The Debtors shall pay all County and Municipalities allowed tax claims in full on or before December 31, 2019.   The creditors shall retain their liens on the Debtor's assets, if any, pursuant to 11 U.S.C. §506(a), with the priority thereof, as existed on the Petition Date pursuant to 11 U.S.C. §1129(a)(9)(D) and § 1129(b)(2)(A)(I)(I), until the claim is paid. With respect to any post-petition taxes which accrued but are not due and owing until the following calendar year, the Debtors will pay such taxes as they become due.   Upon payment of the secured portion of its claim, any lien asserted by any County or Municipality against any asset of the Debtors shall be deemed released and of no further force and effect. Any unsecured general claims of any County or Municipality including any claim for penalties not related to actual pecuniary loss, shall be paid as provided for pursuant to the provisions of Class 10 of the Plan, unless subordinated by separate order of the Court.

3.5   <u>United States Trustee Fees.</u>   All fees required to be paid by 28 U.S.C. § 1930(a)(6). Such fees will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.   Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

**ARTICLE IV**
**<u>TREATMENT OF SECURED AND UNSECURED CLAIMS AND</u>**
**<u>EQUITY INTERESTS UNDER THE PLAN</u>**

Secured claims, unsecured claims and equity interests in the Debtor shall be treated as follows under the Plan:

4.1.   **Class 2** consists of the secured claims of **Citywide** which is secured by various security agreements and recorded financing statements against all of the assets of the Debtor, pursuant to 11 U.S.C. § 506.   Citywide filed a Proof of Claim No. 28 asserting an amount owed as of the Petition Date of $228,678.49 and purports to be the senior secured lienholder, subject only to senior statutory tax liens.   Class 2 is impaired under this Plan.   The Debtor shall treat the Class 2 Claim as follows:

6

4.1.1    The Class 2 claimant shall retain its lien on all of the Debtors' assets listed within the security agreements, in the same priority as existed on the Petition Date, pending payment in full of the Allowed Class 2 Secured Claim, pursuant to 11 U.S.C. §506(a).

4.1.2    The adequate protection payments made to Citywide of $2,500 per month shall be applied to the loan balance as would have ordinarily been applied by Citywide pre-petition, and the remaining amount owed shall be paid as set forth herein.

4.1.3    The Class 2 Claim, less amounts paid post-petition will be allowed in its full amount pursuant to the terms and conditions of the underlying loan documents which support, evidence, and underlie the Allowed Secured Claim.   The Class 2 Allowed Secured Claim shall be satisfied from the sale of the Assets and Properties which shall occur on or before December 31, 2019.

4.1.4    The Debtor shall have the option to pre-pay the Allowed Secured Claim of Citywide any time without premium or penalty.

4.2     **Class 3** consists of the secured claims of **Meadows Bank** which is secured by various security agreements and recorded financing statements against   the assets of the Debtor at its Crestline store only, pursuant to 11 U.S.C. § 506.   Meadows Bank filed a proof of claim No. 7 asserting an amount owed as of the Petition Date of $112,795.37.   Class 3 is impaired under this Plan.   The Debtor shall treat the Class 3 Claim as follows:

4.2.1    The Class 3 claimant shall retain its lien on all of the Debtors' assets listed within the security agreements, in the same priority as existed on the Petition Date, pending payment in full of the Allowed Class 2 Secured Claim, pursuant to 11 U.S.C. §506(a).

4.2.2    The adequate protection payments made to Meadows Bank of $1,000 per month shall be applied to the loan balance as would have ordinarily been applied by Meadows Bank pre-petition, and the remaining amount owed shall be paid as set forth herein.

4.2.3    The Class 3 Claim, less amounts paid post-petition will be allowed in its full amount pursuant to the terms and conditions of the underlying loan documents which support, evidence, and underlie the Allowed Secured Claim.   The Class 3 Allowed Secured Claim shall be satisfied from the sale of the Assets and Properties which shall occur on or before December 31, 2019.

      4.2.4   The Debtor shall have the option to pre-pay the Allowed Secured Claim of Meadows Bank any time without premium or penalty.

    4.3    **Class 4** consists of the first secured claim of **Chase Bank** which is secured by various security agreements and recorded financing statements against the assets of the Debtor at pursuant to 11 U.S.C. § 506.  Chase Bank has not filed a proof of claim but has a scheduled amount owed as of the Petition Date of $18,898.  Class 4 is unimpaired under this Plan.  The Debtor shall treat the Class 4 Claim as follows:

      4.3.1   The Class 4 claimant shall retain its lien on all of the Debtors' assets listed within the security agreements, in the same priority as existed on the Petition Date, pending payment in full of the Allowed Class 2 Secured Claim, pursuant to 11 U.S.C. §506(a).

      4.3.2   The adequate protection payments made to Chase Bank of $500 per month shall be as would have ordinarily been applied by Chase pre-petition, and the remaining amount owed shall be paid as set forth herein.

.

      4.3.3   The Class 4 Claim, less amounts paid post-petition will be satisfied from the sale of the Assets and Properties which shall occur on or before December 31, 2019.

      4.3.4   The Debtor shall have the option to pre-pay the Allowed Secured Claim of Chase Bank any time without premium or penalty.

    4.4    **Class 5** consists of the secured claims of **Everest Financial**  which is secured by various security agreements and recorded financing statements against the future cash of the Debtors   pursuant to 11 U.S.C. § 506.   Everest filed a proof of claim no. 18 asserting an amount owed as of the Petition Date of $75,395.00.  Class 5 is impaired under this Plan.  The Debtor disputes the secured nature of this claim and shall treat the Class 5 Claim as follows:

      4.4.1   The Class 5 claimant shall retain its lien on all of the Debtors' assets listed within the security agreements, in the same priority as existed on the Petition Date, pending payment in full of the Allowed Class 5 Secured Claim, pursuant to 11 U.S.C. §506(a).

      4.4.2   The adequate protection payments made to Everest of $300.00 per month shall be applied as would have ordinarily been applied by Everest pre-petition, and the remaining amount owed shall be paid as set forth herein.

      4.4.3   The Class 5 Claim, if allowed as a secured claim, less amounts paid post-petition will be paid from the sale of the Assets and Properties which shall occur on or before December 31, 2019.

4.4.4   The Debtor shall have the option to pre-pay the Allowed Secured Claim of Everest at any time without premium or penalty.

4.4.5   The Debtor reserves its right to challenge the secured claim of the Class 5 creditor.

4.5   **Class 6** consists of the secured claims of **Accel Capital**  which is secured by various security agreements and recorded financing statements against the future cash of the Debtors  pursuant to 11 U.S.C. § 506.   Accel has not filed a proof of claim in this case but is scheduled as being owed an amount owed as of the Petition Date of $6,500.   Class 6 is impaired under this Plan.   The Debtor disputes the secured nature of this claim and shall treat the Class 6 Claim as follows:

4.5.1   The Class 6 claimant shall retain its lien on all of the Debtors' assets listed within the security agreements, in the same priority as existed on the Petition Date, pending payment in full of the Allowed Class 2 Secured Claim, pursuant to 11 U.S.C. §506(a).

4.5.2   The adequate protection payments made to Accel of $6,500 per month shall be applied as would have ordinarily been applied by Accel pre-petition, and the remaining amount owed shall be paid as set forth herein.

4.5.3   The Class 6 Claim, if allowed as a secured claim, less amounts paid post-petition will be paid from the sale of the Assets and Properties which shall occur on or before December 31, 2019.

4.5.4   The Debtor shall have the option to pre-pay the Allowed Secured Claim of Accel at any time without premium or penalty.

4.6.   **Class 10.   General Unsecured Claims.**   Class 10 shall be comprised of all creditors who hold Allowed Unsecured Claims against the Debtors, other than insiders, including any allowed claims, not subordinated by Order of the Bankruptcy Court, held by any governmental agency which are not related to actual pecuniary loss, by any employee of the Debtor in an amount in excess of $12,475 or otherwise not subject to treatment under 11 U.S.C. § 507(a)(4), and any deficiency claim of any secured creditor.   Class 10 is impaired under the Plan.

4.6.1   Class 10 creditors shall will receive distributions, if at all, over a period of time not to extend beyond December 31, 2019.

4.6.2   Upon the sale of Debtors' assets as contemplated by this Plan Class 10 claimants will be paid from any Net Sale Proceeds remaining after all secured, priority, and senior claims have been paid, pro rata with Allowed Class 11 claimants, the net amount remaining up to the full amount owed to Allowed Class 10 and 11 claimants.

9

4.7   **Class 11.   Insider General Unsecured Claims.**   Class 11 shall be comprised of all insider creditors who hold Allowed Unsecured Claims against the Debtors. Class 11 is impaired under the Plan.

> 4.7.1   Holders of unsecured insider Class 11 claims shall not receive any distributions until general unsecured Class 10 claims have been paid at least (50%) of their allowed unsecured claims at which time the Class 11 Allowed Claims shall be paid equally and on par with Class 10 Allowed Claims.

> 4.7.2   Class 11 creditors shall will receive distributions over a period of time not to extend beyond December 31, 2019.

4.8   **Class 12** consists of the Debtors' equity interests which Colorado Wich Inc. owns 61.4% of the membership interests of Colorado Wich LLC. The shares of Colorado Wich Inc., are in turn held by Mr. Jeffrey Gordan (61.408%), Mr. Jeff Goldstein (16.487%) and four other individuals none of whom holds more than 8%.   The Class 12 Equity Interests are Impaired. The treatment of the Class 12 claims are the same, whether the Plan is confirmed as a Consensual Plan with the acceptance of each class of creditors or by Cramdown in the event of a rejecting class.

> 4.8.1   <u>Consensual Plan:</u>

>> (1)   In the event that the Plan is confirmed as a Consensual Plan, with the acceptance of each class, all Class 12 claimants shares in Colorado Wich Inc. will be canceled as will the membership interest of Colorado Wich Inc. in Colorado Wich LLC.  The shareholder interests of Mr. Gordan, Mr. Goldstein, and all others, are thus canceled as are the membership interest of Colorado Wich Inc. in Colorado Wich LLC.

>> (2)   As a result of the substantive consolidation of the Debtors and upon confirmation of the Plan, Mr. Jeffrey Gordan will be the designated Reorganized Debtor's agent. Mr. Gordan shall be empowered as Debtors' agent to carry out the provisions of the confirmed Plan, including the sale of all or a part of the Debtors' assets, and to otherwise operate as needed the business transactions of the Reorganized Debtor.

>> (3)   If required by state law or statute, Mr. Jeffrey Gordan will be the Reorganize Debtors representative for the purpose of holding the 100% membership interests in the Reorganized Debtor and will hold all membership interests in the Reorganized Debtor in trust, solely for the benefit of the creditors of the estate.

> 4.8.2   <u>Treatment under Cramdown Plan:</u>

10

(1)   The ownership interests of both the Debtors, once the estate of Colorado Wich Inc. is substantively consolidated into the estate of Colorado Wich LLC, shall be canceled subject to the provisions of this Plan and the surviving post confirmation Reorganized Debtor shall be known solely as Colorado Wich LLC and all assets and operations consolidated into that entity.

(2)   As a result of the substantive consolidation of the Debtors and upon confirmation of the Plan, Mr. Jeffrey Gordan will be the designated Reorganized Debtor's agent.   Mr. Gordan shall be empowered as Debtors' agent to carry out the provisions of the confirmed Plan, including the sale of all or a part of the Debtors' assets, and to otherwise operate as needed the business transactions of the Reorganized Debtor.

(3)   If required by state law or statute, Mr. Jeffrey Gordan will be the Reorganize Debtors representative for the purpose of holding the 100% membership interests in the Reorganized Debtor and will hold all membership interests in the Reorganized Debtor in trust, solely for the benefit of the creditors of the estate.

**ARTICLE V**
**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.1   Disputed Claim.   A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.2   Delay of Distribution on a Disputed Claim.   No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.3   Settlement of Disputed Claims.   The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

(a)   Except that the Reorganized Debtor may compromise objections to claims or causes of action referred to in the Plan without notice and hearing for claims or causes of action asserted in the original amount of $100,000 or less, from and after the Effective Date.

(b)   Settlements or compromises of any claims or causes of action asserted in the amount of $100,000 or more shall be with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

11

**ARTICLE VI**
**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6.1    <u>Assumed Executory Contracts and Unexpired Leases</u>.

      The Debtor assumes the following executory contracts and/or unexpired leases effective upon the effective date of this Plan as provided in Article VII:

**a.  Leases:**

      **Crestline Lease dated November 23, 2012**, Colorado Wich – Crestline LLC Tenant, Plaza on the Green LLC, Landlord, Lease assumed and extended per Court order allowing assumption, [Doc. No 80] dated June 28, 2018.

      **Colorado Mills Lease dated March 26, 2010**, Colorado Wich- Colorado Mills LLC Tenant, Burgundy Partners LLC, Landlord, Expires March of 2020.

      **DTC Lease dated October 1, 2011**, Colorado Wich – DTC, LLC Tenant, MR Marina Square LLC, Landlord, Expires October 2021.

      **Lonetree Lease dated January 4, 2007**, Color Wich-Lonetree LLC, Tenant, Meadows Manager 05, LLC Landlord, Expires May 2022.

      **Highlands Ranch Lease dated April 21, 2010**, Colorado Wich – Highlands Ranch TCN LLC, Tenant, Shea Homes – TCN 1 LLC, Landlord, Expires April 2020.

      **Colorado & Evans Lease dated March 3, 2010**, Colorado Wich – EvCo, LLC Tenant, UPSC LLC Landlord, Expires March of 2020.

      **Orchard Town Center Lease dated January 23, 1997 -Extension Dated May 1, 2018**, Colorado Wich – Orchards, LLC Tenant, Vestar Orchard Town Center LLC, Landlord, Expires April 2028.                    .

(b)    **All Workers' Compensation Insurance Policies.**

(c)    **All Premium Insurance Finance Contracts**

(d)    **All machinery and equipment leases including but not limited to Master EFA Agreement ME 00140539, CIT Direct capital.**

(e)    **All franchise agreements and contracts on any kind between the Debtors and Wich Which Corporation, the franchisor, or its assigns and designees.**

12

6.2   Cure Payments. The Debtors will cure any pre-petition defaults in its lease or executory contract obligations as set forth in the attached **Schedule A** over a period of time not to exceed 120 days from the Effective Date by paying such cure amounts in full in cash, or upon such other terms as the respective landlord or contract holder may otherwise agree. In the event there is a dispute over the cure amount the disputed amount shall be withheld by the Debtor until the issue is resolved by agreement of the parties or by a final order of the Bankruptcy Court.

6.3   The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan.

**A PROOF OF A CLAIM ARISING FROM THE REJECTION OF AN EXECUTORY CONTRACT OR UNEXPIRED LEASE UNDER THIS SECTION MUST BE FILED NO LATER THAN SIXTY (60) DAYS AFTER THE DATE OF THE ORDER CONFIRMING THIS PLAN.**

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1   On or about the Confirmation Date, the entity known as Colorado Wich Inc., shall be deemed dissolved and its assets and liabilities and its bankruptcy estate substantively consolidated with Colorado Wich LLC, which shall upon confirmation of this Plan emerge as the Reorganized Debtor. The Reorganized Debtor shall be deemed the owner of all Properties and Assets. Simultaneously with substantive consolidation all the   assets of the substantively consolidated Bankruptcy Estate of Colorado Wich LLC shall then be deemed transferred to the Reorganized Debtor free and clear of all liens, claims, and interests of creditors, equity holders, and other parties in interest, except as otherwise provided herein. Upon the Effective Date, all ownership and equity interests of Colorado Wich Inc. and Colorado Which LLC shall be cancelled.

The Reorganized Debtor shall continue operating its business in the ordinary course which operating costs and expenses will be paid from operating income. The Reorganized Debtor will continue with its marketing of its Properties and Assets, including the sale of its Colorado franchise Which Wich locations for a period not to exceed beyond the sooner of 90 days from the Effective Date or December 31, 2019, whichever occurs first.   On January 2, 2020, or sooner at the election of the Reorganized Debtor, all Properties and Assets not sold shall, with the consent of all secured parties, be liquidated by auction and, absent such consent, all such remaining Properties or Assets shall be deemed abandoned to then senior unpaid secured creditor.

7.1.1 Upon the Effective Date, the current ownership and equity interests in Colorado Wich LLC shall be cancelled and Mr. Jeffrey Gordan shall be appointed as the agent of the Reorganized Debtor pursuant to 11 U.S.C. §1142(b) for the purpose of carrying out the terms of the Plan, and taking all actions deemed necessary or convenient to consummating the terms of the Plans, including but not limited to execution of documents.

7.1.2 To the extent the Reorganized Debtor must have membership interests under applicable state law or statute, any such membership interest shall be issued in the name of Jeffrey Gordan as agent for the Reorganized Debtor and shall be held by him, in trust, for the sole benefit of the creditors of the Reorganized Debtor.

7.1.3 The Dissolution of Debtor and Reorganized Debtor shall be deemed to occur until the later of the entry of the (a) Final Decree or (b) all of the Debtors and Reorganized Debtors affairs have been wound up and all Plan distributions made.

7.2     The Reorganized Debtor shall not, except as otherwise provided in this Plan, be liable to repay any debts which accrued prior to the Confirmation Date.   Except as provided in this Plan, on the Confirmation Date the Debtor and Debtor-in-Possession shall be granted a discharge under 11 U.S.C. § 1141.

7.3     Thirty days after the Effective Date, the Debtor shall implement its Plan of Reorganization pursuant to the terms for each class of claimants set forth above.   The payments under the Plan shall come from two sources. First, from the cash flow of the Reorganized Debtor generated by the Reorganized Debtor's business operations while it seeks to sell its assets in whole or in part. Second, from the sale of the Properties and Assets of the Reorganized Debtor, in whole or in part, over the period not to extend beyond the sooner of 90 days from the Effective Date or December 31, 2019, whichever occurs first.   On the due date for payments as set forth above, the Reorganized Debtor shall immediately distribute the required amount to each claimant holding an Allowed Secured, Priority or Unsecured Claim and escrow the required amounts for each creditor holding a Contested Claim as provided in Article V of the Plan.

7.4     Upon Class 10 creditors receiving distributions of not less 50% of their allowed claims, then pro rata with the holders of Allowed Class 11 claims shall commence and paid in accordance with ¶4.6.   The Debtor shall provide Allowed Class 10 and 11 Creditors with a summary calculation of the Creditor Fund for the prior quarter at the time the distribution is mailed.

7.5     On the Effective Date, the Debtor shall establish two separate bank account for funds to be held by the Debtor in order to insure performance of its obligations under the Plan. All funds held by the Reorganized Debtor for distribution under the Plan shall be held in accounts which are insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States. The fund to be established is as follows:

(a).     **Creditor Fund:** Upon confirmation of the Debtor's Plan, and prior to the Effective Date, the Debtor will open a separate "Creditor Fund" in a separate, interest bearing account.   All net sale proceeds from the sale of the Debtor's Properties or Assets, less no more than 10% held back for operating funds, shall be deposited into the Creditor Fund account.

14

(b).    **Operating Funds Account**: After confirmation of the Debtor's Plan, the Debtor shall open and maintain an Operating Funds Account to meet its operating fund needs. The current funds in the Debtors in Possession ("DIP") account will be placed into this account.   During the life of the Plan this account will be used to pay normal operating and administrative costs of the Debtors but may also be used to pay any shortfall in any payments to secured and/or priority creditors.   The Debtor shall properly maintain the records of its Operating Funds Account, including any disbursements out of such account, which shall be available to be reviewed by any creditor in accordance with the Disclosure Statement and the Plan.

7.6    <u>Payments to Creditors from Creditor Fund</u>:    Thirty days after the Effective Date, the Debtor shall implement its Plan of Reorganization pursuant to the terms for each class of claimants set forth above.   The payments under the Plan shall come from two sources. First, from the cash flow of the Reorganized Debtor generated by the Reorganized Debtor's business operations while it seeks to sell its assets in whole or in part. Second, from the sale of the Assets and Properties of the Reorganized Debtor, in whole or in part, over the period not to extend beyond the sooner of 90 days from the Effective Date or December 31, 2019, whichever occurs first.   On the due date for payments as set forth above, the Reorganized Debtor shall immediately distribute the required amount to each claimant holding an Allowed Secured, Priority or Unsecured Claim and escrow the required amounts for each creditor holding a Contested Claim as provided in Article V of the Plan.

7.7    The payments from the Creditor Fund shall be discretionary with the Reorganized Debtor and will be made in accordance with this Plan. The payments will continue until the earlier of (1) a period not to extend beyond the sooner of 90 days from the Effective Date or December 31, 2019, or (2) upon the sale of all or a part of the Reorganized Debtor's assets in an amount sufficient to satisfy all Allowed Claims.

7.8    The Reorganized Debtor's financial records shall be available for review by creditors upon reasonable notice to the Debtor and its counsel during normal business hours subject to execution of an appropriate confidentiality agreement.

7.9    The Reorganized Debtor may pursue any claims or recovery actions held by the Debtor, including but not limited to recovery under 11 U.S.C. §§544, 547, 548 and 549.   The Reorganized Debtor may abandon any claim it has against any third party if it determines that the claim is burdensome or of inconsequential value and benefit. The Reorganized Debtor is authorized to employ counsel to represent it in the litigation or any cause of action or claims held by the Debtor.

7.10    All funds held by the Reorganized Debtor for distribution under the Plan shall be held in accounts which are insured or guaranteed by the United States or by a department, agency or instrumentality of the United States or backed by the full faith and credit of the United States.

7.11     After the Effective Date, the Reorganized Debtor exercising its business judgment may sell, operate or abandon any of its assets.

7.12     <u>Cancelling and Issuing New Stock:</u>   The treatment of the Reorganized Debtor's stock, Class 12,   is dependent upon whether the Plan is confirmed as a Consensual Plan with the acceptance of each class of creditors or by Cramdown in the event of a rejecting class.

        7.12.1   <u>Consensual Plan:</u> In the event that the Plan is confirmed as a Consensual Plan, with the acceptance of each class, the Class 12 interests shall be treated as set forth in Paragraph 4.8.1 hereof.

        7.12.2   <u>Cramdown:</u>   In the event that the plan is confirmed by cramdown, without the acceptance of each class, the Class 12 interests shall be treated as set forth in Paragraph 4.8.2 hereof.

        7.12.3   As may be required, the Articles of Incorporation and By Laws of the Debtor shall be amended on or before the Effective Date to comply and conform to this Plan.

7.13     The Reorganized Debtor shall not, except as otherwise provided in this Plan, be liable to repay any debts which accrued prior to the Confirmation Date.

7.14     <u>Unclaimed Distributions.</u>   For a period of one year following the date a payment is due under the Plan, the Reorganized Debtor shall retain in a reserve account for issuance of any unclaimed distributions for the benefit of the holders of allowed claims and/or administrative expenses which have failed to claim such distributions.   Following the one year period after such distributions are due, the holders of allowed claims or allowed administrative expenses theretofore entitled to such distributions held in such reserve account shall cease to be entitled thereto and thereupon such distributions shall become property of the Reorganized Debtor.

## ARTICLE VIII
## GENERAL PROVISIONS

8.1     <u>Definitions and Rules of Construction.</u>   The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the definitions in the Disclosure Statement.

8.2     <u>Severability.</u>   If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.3     Binding Effect.   The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.4     Captions.   The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.5     Controlling Effect.   Unless a rule of law or procedure is supplied by federal law including the Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of Colorado govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.6     Entire Agreement.   This Plan, together with the exhibits hereto, constitutes the entire agreement among the parties hereto and there are no agreements, representations or warranties which are not set forth herein.   All prior negotiations, agreements and understandings are superseded hereby.

## ARTICLE IX
## DISCHARGE

9.1.    Discharge.   Pursuant to 11 U.S.C. §1141(d)(1)(A), confirmation of the Debtor's Plan shall discharge the Debtor from any debt that arose before the date of such confirmation and any debt of a kind specified in 11 U.S.C. §502(g), 502(h), or 502(I), whether or not: (a) a proof of claim is filed or deemed filed; (b) such claim is allowed under 11 U.S.C. §502; or, (c) the holder of such claim has accepted the plan.   Confirmation of the Plan also terminates all rights and interests of equity security holders and general partners provided for by the Plan.   The Reorganized Debtor shall be entitled to seek injunctive relief from the Court, if necessary, to enforce any and all provisions of the Plan.

## ARTICLE X
## DEFAULT OF PLAN

10.1    In the event of any default by the Reorganized Debtor of any payment to any class of claimants arising under the terms of this Plan other than payment to IRS, the Reorganized Debtor shall have thirty (30) days within which to cure any default in payments due under this Plan after the date of issuance of written notice from any claim holder.   The IRS has taken the position that it is not required to give the Debtor notice of any default.

10.2    Written notice shall be provided to the Reorganized Debtor and to Debtor's counsel. For purposes of this section, the notice to Debtor's counsel shall be served upon Buechler Law Offices, L.L.C. 999 18th Street, Suite 1230-S, Denver, Colorado 80202, unless written notice of substitution of legal counsel is served upon the claim holder at least fifteen (15) days prior to the date notice is sent.

10.3    In the event that the Reorganized Debtor fails to cure any default in the requirements to make payment under the Plan, within thirty days from the date that written notice is sent in compliance with paragraph 10.2, the entire amount of the obligations dealt with under the Plan shall be immediately due from the Reorganized Debtor.

## ARTICLE XI
## <u>MISCELLANEOUS PROVISIONS</u>

11.1    <u>Retention of Jurisdiction</u>. The Reorganized Debtor reserves the right to reopen the Chapter 11 Case after Confirmation and dismissal for the purposes set forth in this paragraph. The Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

(1)    To hear and determine any and all objections to the allowance of Claims or Interests.

(2)    To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan, to the extent such claim was incurred prior to the Effective Date.

(3)    To hear and determine any and all pending applications for the rejection or assumption, or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party, and to hear and determine any and all Claims arising therefrom.

(4)    To hear and determine any and all applications, adversary proceedings, and contested or litigated matters that may be pending on the Effective Date or instituted by the Reorganized Debtor thereafter.

(5)    To consider any modifications of the Plan, to remedy any defect or omission, or reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court, including the Confirmation Order.

(6)    To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan.

(7)    To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor that arose prior to the Petition Date or in connection with the Bankruptcy Case and where the original claim or cause of action is in excess of $50,000.00.

(8)    To issue orders in aid of execution of the Plan as contemplated by 11 U.S.C. § 1142.

(9)     To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation

11.2.   Vesting of Property.   The Reorganized Debtor shall be vested with ownership to all property of the estate upon the Effective Date subject to any liens and encumbrances provided in the Plan.

11.3.   Satisfaction of Claims. The payment of Allowed Claims, Allowed Administrative Claims and Allowed Secured Claims shall be in exchange for all claims against the Debtor and shall constitute full settlement, release, discharge, and satisfaction of all such claims against the Debtor.   Confirmation of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan.   Any obligation or note, previously in default, so modified, shall be cured as modified as of the Confirmation Date.   This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

11.4.   Pre-Existing Causes of Action. Nothing herein contained shall prevent the Reorganized Debtor from taking any action as may be necessary to the enforcement of any cause of action which may exist on behalf of the Reorganized Debtor and which may not have been enforced or prosecuted by the Debtor prior to the Effective Date.

11.5.   Headings. The headings used in the Plan are for convenience of reference only and shall not limit or in any manner affect the meaning or interpretation of the Plan.

11.6.   Notices. All notices, request, demands, or other communications required or permitted in this Plan must be given in writing to the party(ies) to be notified.   All communications will be deemed delivered when received at the following addresses:

(a)     Jeffrey A. Gordan, Representative
        c/o Michael J. Guyerson, Esq.
        Kenneth J. Buechler
        Buechler Law Office, L.L.C.
        999 18th Street, Suite 1230-S
        Denver, CO 80202
        Telephone: (720) 381-0045
        Fax: (720) 381-0382
        Email:  mike@kjblawoffice.com
        ken@kjblawoffice.com

(b)     With a copy to:

        Michael J. Guyerson, Esq.
        Kenneth J. Buechler
        Buechler Law Office, L.L.C.

19

999 18th Street, Suite 1230-S
Denver, CO 80202
Telephone: (720) 381-0045
Fax: (720) 381-0382
Email:  mike@kjblawoffice.com
ken@kjblawoffice.com

(c)     To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, or, if no Proof of Claim is filed, at the address set forth for the claimant in the Debtor's Schedules filed with the Bankruptcy Court.

11.7.   <u>Successors and Assigns</u>. The Plan will be binding upon the Reorganized Debtor, any creditor affected by the Plan and their heirs, successors, assigns and legal representatives.

11.8   <u>Substantial Consummation.</u> On the Effective Date or as soon thereafter as practicable, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

11.9   <u>Exemption from Transfer Taxes.</u> Subject to orders entered by the Bankruptcy Court prior to the Confirmation Date authorizing certain sales of real property, pursuant to section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition of assets contemplated by the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.

11.10   **Releases by Debtor, Exculpation of Debtor, its officers and directors, and Injunction against claims against Debtor, its estate and its assets.**

(a)     *Definitions.*

(i)     "*Representatives*" means, with regard to any entity, its officers, directors, employees, advisors, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, members and professionals).

(ii)     "*Exculpated Parties*" means, collectively, the Debtor, the officers and directors of the Debtor that served in such capacity at any time from and after the Petition Date (in their capacity as such as well as in their individual capacities), and each of their respective Representatives (each of the foregoing in its individual capacity as such).

(b)     *Compromise and Settlement*

20

Should the Plan be confirmed by consent pursuant to 11 U.S.C. §1129(a), pursuant to 11 U.S.C. § 363 and Fed.R.Bankr.P. 9019, and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and equity interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and equity interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, and reasonable and in the best interests of the Debtor, the estate and holders of Claims and equity interests.

(c)     ***Releases by the Debtor.***

**Should the Plan be confirmed by consent pursuant to 11 U.S.C. §1129(a), notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, for the good and valuable consideration provided by all Holders of Claims, all Holders of Equity Interests, and their respective Representatives, including, without limitation, the satisfaction and elimination of debt and all other good and valuable consideration paid pursuant to the Plan or otherwise, the Debtor hereby provides a full release, waiver and discharge to all Holders of Equity Interests and their respective Representatives (and each such party shall be deemed released and discharged by the Debtor) from any and all causes of action and any other debts, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date, in law, equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that are based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances taking place or continuing during these Chapter 11 Cases and prior to or on the Effective Date in any way related to the Debtor or the conduct of the Chapter 11 Cases, including, without limitation, those that the Debtor would have been legally entitled to assert or that any holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of the Debtor or the bankruptcy estate and further including those in any way related to the Chapter 11 Cases or the Plan. Notwithstanding the foregoing, nothing herein is intended or shall be deemed to release any of the parties released under this provision from any claims or causes of action determined in a Final Order to have (i) resulted from gross negligence, willful misconduct, or fraud by such a released party, or (ii) arisen prior to the Petition Date.**

(d)     ***Exculpation***

**Should the Plan be confirmed by consent pursuant to 11 U.S.C. §1129(a), notwithstanding anything contained in the Plan to the contrary, the Exculpated Parties shall neither have nor incur any liability to any entity for any and all claims and causes of action arising on or after the Petition Date and prior to or on the Effective Date relating in any way to the conduct of this Chapter 11 Case, including any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Case, including, without limitation, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection**

21

with the Chapter 11 Case; provided, however, that the foregoing provisions of this Article shall have no effect on the liability of any Exculpated Party that results from any such act or omission that is determined in a Final Order to have (i) constituted gross negligence, willful misconduct, or fraud, (ii) been outside the scope of their respective duties in the Chapter 11 Case, or (iii) arose prior to the Petition Date.

(e) *Injunction*.  Should the Plan be confirmed by consent pursuant to 11 U.S.C. §1129(a),

(i) except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, and except for claims and causes of action expressly carved out of the release provisions that are based upon gross negligence, willful misconduct, or fraud by a party released thereunder, all Holders of Claims, and all Holders of Equity Interests are permanently enjoined, on and after the Effective Date, on account of any claim or equity interest in the Debtor, from:

(A) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor's estate, its successors and assigns, and any of its assets;

(B) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor's estate, its successors and assigns, and any of its assets;

(C) creating, perfecting or enforcing any encumbrance of any kind against the Debtor's estate, its successors and assigns, and any of its assets;

(D) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor's estate, or its successors and assigns, or against any of its assets, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of claim; or

(E) commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim or equity interest or cause of action released or settled hereunder.

(ii) Should the Plan be confirmed by consent pursuant to 11 U.S.C. §1129(a), from and after the Effective Date, all Holders of Claims, and all Holders of Equity Interests are permanently enjoined from commencing or continuing in any manner against the Debtor, its estate, its successors and assigns, and any of its assets, any suit, action or other proceeding, on account of or respecting any claim, demand, liability,

22

**obligation, debt, right, cause of action, interest or remedy released or to be released pursuant to the Plan or the Confirmation Order.**

11.11   <u>Severability.</u>   If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

11.12   <u>Binding Effect</u>.   The rights and obligations of any entity named or referred to in the Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

11.13   <u>Captions.</u>   The headings contained in the Disclosure Statement and the Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

11.14   <u>Controlling Effect.</u>   Unless a rule of law or procedure is supplied by federal law including the Code or the Federal Rules of Bankruptcy Procedure, the laws of the State of Colorado govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

11.15   <u>Plan Default.</u>   In the event that the Reorganized Debtor fails to cure any default in the requirements to make payment under the Plan, within thirty (30) days from the date that written notice is sent in compliance with paragraph 10.1 of the Plan, the entire amount of the obligations dealt with under the Plan shall be immediately due from the Reorganized Debtor.

## ARTICLE 12
## DEFINITIONS

12.01 - <u>Administrative Claim</u> shall mean a Claim for payment of an administrative expense of a kind specified in § 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to § 507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estates and operating the businesses of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case; (b) Professional Fee Claims; (c) all fees and charges assessed against the estates under 28 U.S.C. § 1930; (d) certain post-petition tax claims; and (e) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under § 503(b) of the Bankruptcy Code.

12.02 - <u>Allowed Claim</u> shall mean a claim in respect of which a Proof of Claim has been filed with the Court within the applicable time period of limitation fixed by Court Order in the cases or scheduled in the lists of creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, and as to which no timely objection to the allowance thereof

has been filed pursuant to Bankruptcy Rules 3001 and 3007 or as to which any such objection has been determined by a Final Order.

12.03 - <u>Allowed Secured Claim</u> shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under § 553 of the Code, to the extent of the value (determined in accordance with § 506(a) of the Code) of the interest of the holder of any such allowed claim and the Debtor's interest in such property or to the extent of the amount subject to such setoff as the case may be.

12.04 - <u>Avoidance Actions</u> shall mean Debtor's estate's interest in any and all Claims, rights and causes of action which have been or may be commenced by or on behalf of the Debtor to avoid and recover any transfers of property determined to be preferential, fraudulent or otherwise avoidable pursuant to §§ 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under any other applicable law, or otherwise subject to equitable subordination under §510 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

12.05 - <u>Claim</u> shall mean any right to payment, or right to any equitable remedy for breach of performance if such breach gives rise to the right to payment, against the Debtor in existence on or as of the Petition Date, whether or not such right to payment or right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, natured, unmatured, disputed, undisputed, legal, secured or unsecured.

12.06 - <u>Class</u> shall mean any Class into which Allowed Claims are classified pursuant to Article II.

12.07- <u>Class 1-12 Claims and Interests</u> shall mean the Allowed Claims and Interests so classified in Article II.

12.08 - <u>Code</u> shall mean the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* and any amendments thereof.

12.09 - <u>Confirmation Date</u> shall mean the date upon which the Order of Confirmation is entered by the Court.

12.10 - <u>Court</u> shall mean the United States Bankruptcy Court for the District of Colorado in which the Debtor's Chapter 11 case is pending, pursuant to which this Plan is proposed, and any Court having competent jurisdiction to hear appeal or certiorari proceedings therefrom.

12.11 – <u>Debtors or Debtor</u> shall mean the Debtor who is proposing this Chapter 11 Plan.

12.12 - <u>Disclosure Statement</u> shall mean the Disclosure Statement which is approved by the Court according to 11 U.S.C. § 1125 to be utilized to solicit votes for this Plan.

12.13 - <u>Disputed Claim</u> means any Claim which is not an Allowed Claim, including, without limitation, any Claim designated as disputed, contingent or unliquidated in Debtor's schedules filed in connection with the cases, or any Claim against which an objection to the allowance thereof has been interposed, and as to which no Final Order has been entered.

12.14 - <u>Effective Date of the Plan</u> shall mean 20 days from the date on which the Order for Confirmation is entered or if a stay is entered pending appeal of the Order of Confirmation, the date on which the stay is no longer in effect.

12.15 - <u>Final Order</u> shall mean an order or judgment of the Court which shall not have been reversed, stayed, modified or amended and as to which (a) the time to appeal from or to seek review, rehearing or certiorari shall have expired, and (b) no appeal or petition for review, rehearing or certiorari is pending or if appealed shall have been affirmed, or the appeal dismissed by the highest court to which such order was appealed, or if review, rehearing or certiorari was sought, such review, rehearing or certiorari has been denied and no further hearing, appeal or petition for review, rehearing or certiorari can be taken or granted or as to which any right to appeal or to seek a review, rehearing or certiorari has been waived.

12.16 - <u>Interest</u> shall mean any ownership interest or any instrument evidencing any ownership interest in the Debtor's personal property.

12.17 - <u>Net Available Cash</u> means those cash proceeds from operations left after payment of normal operating expenses, taxes, and overhead of the Reorganized Debtor.

12.18 - <u>Net Sale Proceeds</u> shall mean the gross sale proceeds collected by the Debtor or Reorganized Debtor on account of the liquidation of its assets, less payment of applicable real estate taxes, closing costs and fees, brokers' commissions, and any other necessary costs of liquidation.

12.19 - <u>Order of Confirmation</u> shall mean the Order entered by the Court confirming the Plan in accordance with the provisions of Chapter 11 of the Code.

12.20 – <u>Petition Date</u> shall mean the date on which the Voluntary Petition was filed by the Debtor on April 24, 2018.

12.21 - <u>Plan</u> shall mean this Joint Plan of Reorganization, as amended in accordance with the terms hereof or modified in accordance with the Code, including all exhibits and schedules attached hereto or referenced herein or therein.

12.22 - <u>Priority Claim</u> means any pre-petition Claim entitled to a priority in payment under § 507(a) of the Code but shall not include any Administrative Claim or Tax Claim.

12.23 - <u>Pro Rata</u> shall mean the ratio of an Allowed Claim or Interest in a particular Class to the aggregate amount of all Allowed Claims or Interests in that Class.

12.24 - <u>Professional Fees</u> means the Administrative Claims for compensation and reimbursement submitted pursuant to Section 330, 331 and 503(b) of the Code by a professional.

12.25 – <u>Properties or Assets</u> shall mean all of the Debtors' franchise locations and all assets associated therewith or otherwise owned or held by the Debtors, including all executory contracts and leases, licenses, franchise agreements and property of any kind.

12.26 - <u>Rules</u> shall mean the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules for the District of Colorado as adopted by the Court.

12.27 – <u>Reorganized Debtor</u> means Colorado Wich Inc. as substantively consolidated with Colorado Wich LLC, and upon confirmation of this Plan will become the Reorganized Debtor who, after the Effective Date of the Plan, is authorized to act as provided for under the Plan.

12.28 - <u>Sale Proceeds</u> shall mean the proceeds of the sale of the Debtors' assets as set forth in this Plan.

12.29 - <u>Tax Claim</u> means any unsecured Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

12.30 - <u>Unclassified Priority Claims</u> shall mean Claims pursuant to Section 507(a)(2) which are Administrative Claims allowed under Section 503(b) of the Code and any fees and charges against the estate under Chapter 23 of Title 28 of the United States Code and shall further mean Allowed Unsecured Claims of governmental units to the extent provided for in Section 507(a)(8) of the Code.

12.31 – <u>Unsecured Creditor Account</u> shall mean that segregated account referenced and established pursuant to this Plan, into which the Debtor will deposit funds for distribution to all Allowed Administrative Claims until paid in full and then Class 10 and 11 creditors.   The account will be maintained at a federally insured banking institution and the account shall be maintained within the insurance limit of the institution.

12.32 - <u>Other Definitions</u>.   Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in the Plan but that is defined in the Code or Rules shall have the meaning set forth therein.

This Plan is respectfully submitted.

Dated:   March 15, 2019

Colorado Wich Inc., Inc.

*/s/ Jeffrey A. Gordan*

_____

By: Jeffrey A. Gordan, President

Colorado Wich LLC

*/s/ Jeffrey A. Gordan*

_____

By: Jeffrey A. Gordan, Manager

Buechler Law Office L.L.C.
*/s/ Kenneth J. Buechler*

_____

Kenneth J. Buechler, #30906
Michael J. Guyerson # 11279
999 18th Street, Suite 1230-S
Denver, Colorado 80202
Tel: 720-381-0045
Fax: 720-381-0382
ken@kjblawoffices.com

ATTORNEYS FOR THE DEBTORS

AMENDED
SCHEDULE A

**Case No. 18-13443; Colorado Wich LLC**

| CLAIMANT | SCHEDULED AMOUNT | PROOF OF CLAIM | DIFFERENCE | CURE STMT | AMOUNT TO CURE |
|---|---|---|---|---|---|
| **LANDLORD CURE FIGURES** | | | | | |
| Burgundy Partners, LLC | $25,000.00 | $32,935.20 | $7,935.20 | NONE | $32,935.20 - disputed |
| * DDR MCH West LLC | $3,100.00 | | | NONE | Lease Terminated |
| Meadows Manager 05, LLC | $8,824.34 | $3,585.42 | -$5,238.92 | NONE | $3,585.42 |
| * Plaza on the Green, LLC | $15,000.00 | | | NONE | Lease Already Assumed |
| Shea Homes - TCN 1, LLC | $15,499.12 | $10,418.85 | -$5,080.27 | NONE | $10,418.85 |
| Vestar Orchard Town Center, LLC | $12,606.62 | | | NONE | $12,606.62 |
| MB Marina Square, Llc | $13,703.50 | $14,644.07 | $940.57 | $22,894.80 | $22,894.8- disputed |
| TCNI, LLC | $0.00 | $10,418.85 | $10,418.85 | $19,347.70 | $19,347.7- disputed |
| **Which Wich Franchise, Inc. | $0.00 | $64,274.23 | $64,274.23 | | $64,274.23 |
| | | | | | |
| **TOTAL** | **$93,733.58** | **$136,276.62** | **$73,249.66** | **$42,242.50** | **$166,062.82** |
| | | | | | |
| **TOTAL CURE CLAIMS ASSERTED** | | **$166,062.82** | | | |

Total claims asserted is comprised of the "scheduled amount"
except if a proof of claim is filed, in which case the proof of claim
 is considered in determing the total claims asserts

*PAID
** Franchise Fees Owed Pre-Petition